## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DALE A. BOND,                                    )
                                                 )
                            Plaintiff,           )
                                                 )        CIVIL ACTION
v.                                               )
                                                 )        No. 15-2002-JWL
CAROLYN W. COLVIN,                               )
Acting Commissioner of Social Security,          )
                                                 )
                            Defendant.           )
_____          )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under

sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and

1382c(a)(3)(A) (hereinafter the Act).  Applying the deference due to the Administrative

Law Judge's (ALJ) credibility finding, the court finds no error and ORDERS that

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff applied for SSI benefits, alleging disability beginning December 14, 2009.

(R. 10, 35, 100-03, 384).  After a previous remand by another judge in this district,

Plaintiff once again exhausted proceedings before the Commissioner, and now seeks

judicial review of the final decision denying benefits.  (R. 444, 452) (Bond v. Colvin,

Case No. 12-2508-JTM, slip op. (D. Kan. Sept. 25, 2013)); see also (Doc. 1).  Plaintiff

argues that the ALJ erred in finding that Plaintiff does not require the use of a cane for

walking, and failed his duty to develop the record and obtain an updated medical opinion

after the district court's remand.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804

(10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant

work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court recognizes the ALJ's reliance on the overwhelming record evidence that

Plaintiff's allegations are not credible, and finds no error in the decision denying benefits.

The court addresses each alleged error in the order presented in Plaintiff's Brief.

## II.   Alleged Need for the Use of Canes

Plaintiff acknowledges that on remand from the district court the ALJ considered

Plaintiff's use of two canes as was required by the court's remand order, but argues that

his findings in that regard "are unsupported by and inconsistent with the substantial

evidence of the record as a whole."  (Pl. Br. 12).  He argues that "[t]he ALJ's reliance on

records from 2004 that fail to mention any use of a cane is not substantial evidence to

support his decision" (Pl. Br. 12); that the ALJ's findings that neither one nor two canes

were prescribed are contrary to the record evidence, id. at 12-14, and, that the vocational

expert testified that if even the use of one cane was required Plaintiff would be unable to

perform any work.  Id. at 14.  Finally, Plaintiff pointed to the opinion that Plaintiff needed

to use a cane, which was proffered by several of Plaintiff's medical care providers, and

argued that the ALJ erroneously rejected these opinions because of the providers' status

as "other medical sources" rather than "acceptable medical sources."  (Pl. Br. 14-15).

The Commissioner argues that the ALJ adequately addressed Plaintiff's alleged need to use canes, and that the record evidence supports his analysis.  (Comm'r Br. 6-8). She argues that "the ALJ pointed out the plethora of conflicting statements regarding Plaintiff's need to use a cane," id. at 6, that the record showed that Plaintiff's scores on a pain questionnaire "tend to indicate exaggeration of symptoms," that "imaging tests of Plaintiff's right knee repeatedly showed at most mild findings," id. at 7, and that the RFC assessed for Plaintiff adequately accounted for those limitations in the use of Plaintiff's right knee which were credible.  Id. at 8.  In his Reply Brief, Plaintiff argues that the record does not support the ALJ's finding or the Commissioner's argument with regard to the pain questionnaire, and that the "mild" findings on imaging tests "led to surgery on Plaintiff's knee."  (Reply 3).

The court finds no error in the ALJ's findings that Plaintiff is not required to use even one cane, and that the ALJ's RFC assessment adequately reflects the extent of Plaintiff's limitations resulting from Plaintiff's right knee pain.  Even the most casual reading of the decision below reveals that the single most discussed (and therefore, likely the most important) factor in deciding that Plaintiff was not disabled was the fact that Plaintiff's allegations were simply not credible.  On the very first page of his findings of fact and conclusions of law, the ALJ explained that "claimant's multiple inconsistent statements . . . reduces claimant's credibility with regard to the frequency, duration, intensity and limiting effects of claimant's symptoms upon his ability to perform basic work activity.  As noted by ALJ Pardo in the prior decision 'claimant's statements

appeared riddled with inconsistency, exaggeration, and omission.'"  (R. 386) (quoting R.

436, duplicate of R. 16).  From that point on, the decision details the inconsistencies,

exaggerations, and other rationale relied upon by the ALJ in finding Plaintiff's allegations

are not credible.  In both his step three discussion and his RFC assessment the ALJ

provided extensive discussions of the relevant record evidence--particularly as it relates to

Plaintiff's use of a cane or of two canes.  (R. 387-92).  Moreover, at the end of his step

three analysis, the ALJ found that "claimant is even less credible than determined by ALJ

Pardo in his decision."  (R. 389).  Yet, Plaintiff makes no claim of error in the credibility

determination.  And, in the prior proceedings before the district court Plaintiff did not

claim error in the credibility analysis in ALJ Pardo's decision.  (R. 444).  Moreover, the

court's review reveals that the ALJ's decision, including his credibility determination, is

supported by the record evidence.

　　　Plaintiff argues that it was error for the ALJ to consider records from 2004 because

they were from five years before the alleged onset date and are, therefore, outside the

relevant period in this case.  (Pl. Br. 12).  Plaintiff's argument ignores the actual posture

of this case.  As Plaintiff's argument implies, the regulation require that the

Commissioner will develop a "complete medical history for at least the 12 months

preceding the month in which [a claimant files his] application unless there is a reason to

believe that development of an earlier period is necessary or unless you say that your

disability began less than 12 months before you filed your application."  20 C.F.R.

§ 416.912(d).  Plaintiff filed his application on December 14, 2009 (R. 10), and

6

consequently the agency would ordinarily have developed a medical history beginning in December, 2008.  However, Plaintiff ignores that when he first filed his application, he also applied for Disability Insurance Benefits and alleged that his disability began on January 1, 2005.  (R. 95).  Therefore, in accordance with the regulations it was necessary for the agency to develop the medical history from January, 2004.

The Kansas Department of Corrections (KDOC) medical records in which the 2004 medical records are contained include records from March 2, 2004 through October 15, 2009.  (R. 223-46).  The ALJ's decision mentions the 2004 medical records in only two sentences, noting that the KDOC intake screening in 2004 revealed no signs of trauma, illness or injury, no deformity, and no mention of a cane; and that a KDOC examination on June 2, 2004 reported normal gait and normal posture.  (R. 387) (see also R. 235-36, 244).  These two sentences are of little significance in the decision, but as discussed above Plaintiff's need for a cane is central to the Commissioner's decision. Plaintiff argues that he "became disabled on or about December 14, 2009 due to [(among other impairments)] residuals from a gunshot wound to his right knee."  (Pl. Br. 1) (citation omitted).  The facts recited by the ALJ are relevant to the inquiry regarding Plaintiff's use of a cane, because the gunshot wound of which Plaintiff complains occurred in 2001 (R. 238), and when Plaintiff was evaluated by the KDOC for parole or release in October, 2009, the records indicated chronic derangement and gait disturbance of his right knee due to an old gunshot wound.  (R. 225).  It was not error for the ALJ to include reference to the 2004 KDOC medical records in his decision.

Plaintiff next argues that the ALJ's finding that neither one nor two canes was prescribed, is contrary to the record evidence because the KDOC nurse issued a cane and knee brace, and a physical therapist later recommended Plaintiff use bilateral Lofstrand crutches.  (Pl. Br. 13) (citing R. 355, 565, 567, 569).  Plaintiff's argument ignores the ALJ's discussion of these issues.  The ALJ thoroughly explained his rationale regarding prescription of a single cane:

> A February 26, 2009 prison record indicates claimant was issued a knee brace and cane by Pam Cassanova, R.N.  I note Ms. Cassanova is not an acceptable medical source under our regulations, and that nurses lack prescriptive privileges.  Claimant testified his single cane was prescribed when he was in prison.  There is no record of such a prescription.  Ms. Cassanova's notes also indicate significantly less limitation than claimant has alleged, stating claimant "may only stand, walk for 60 min[utes] at a time," and should avoid "prolonged crawling, stooping, running, walking or standing," as well as "strenuous physical activity," and "lifting heavy materials in excess of 10 pounds," (Exhibit 10F at 3).  These records reveal claimant's cane was never prescribed by an acceptable medical source.  However, I assign Ms. Cassanova's limitations some weight, noting that they are consistent with sedentary work, with exertional limitations as indicated above.

(R. 387-88).  The ALJ acknowledged what happened here, and he is correct that nurses lack prescriptive privileges.  Moreover, although the record is not absolutely clear, it notes that Plaintiff was "issued [a] knee brace" (R. 355), but it does not say the same about a cane.  It states "Cane for cor use."  (R. 355).  While the record seems to indicate that Plaintiff was also given a cane, it does not suggest that a cane was absolutely necessary.  In fact, the record reflects the "significantly less limitations" alluded to by the

ALJ, and in context suggests that use of a cane was not required.  As the ALJ found, there is no record evidence that a cane was ever prescribed by an "acceptable medical source."

The ALJ also explained his consideration of the treatment notes from Plaintiff's physical therapist, Mr. Sanford.  He noted that "Mr. Sanford's other PT records indicate claimant's regular reports that he 'was on his feet a lot,' inconsistent with claimant's allegations.  Those records indicate claimant's use of the double canes was his own idea and is completely volitional (Exhibit 14F at 5)."  (R. 389).  The record to which the ALJ cites consists of Mr. Sanford's report of Plaintiff's "Subjective Comments," and reveals that Plaintiff reported fear of having a cane on his left side, and later reported that he was "[s]till using the Lofstrand cane and too afraid to use it on my right."  (R. 562).  Finally, the note reveals that Plaintiff had "[b]een going with B[ilateral] Lofstrand canes and it is much helping to decrease my R knee pain and he [sic] feels much more stable."  Id.  That record evidence supports the ALJ conclusion that Plaintiff's use of the bilateral canes was volitional.  Plaintiff points to the "Intervention Comments," a different portion of Mr. Sanford's "Discharge Summary," and argues that Mr. Sanford "advised" and "recommended" that Plaintiff use the bilateral Lofstrand canes.  (Pl. Brief 13) (citing R. 565).  While Plaintiff's argument is one way of viewing Mr. Sanford's treatment notes, the ALJ's view is also supported by the record evidence.  The question before the court is whether the record evidence supports the final decision in this case, not whether the plaintiff can provide an explanation which is supported by the record evidence.

Moreover, the court may not reweigh the evidence and substitute its judgment for that of the ALJ.  <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

As Plaintiff suggests, Mr. Sanford's notes state, "Recommended using bilateral lofstrand [sic] canes to decrease WB [(weightbearing)] on R lower extremity," "Worked on gait pattern with B[ilateral] lofstrand [sic] crutches," "discouraged R hip extension push off without use of B lofstrand [sic] crutches for safety and encouraged him to use B lofstrand [sic] all the time," and "Patient has made no significant progress except with now using B Lofstrand crutches for increased safety."  While these notes certainly might be found to suggest that Mr. Sanford recommended that Plaintiff use bilateral canes, they are also consistent with the ALJ's understanding that Plaintiff decided to use bilateral canes himself, and that Mr. Sanford instructed him how to use them, and recommended that if he used them he should use them all of the time.  And, the ALJ's view is supported by Mr. Sanford's explanation that Plaintiff had made no significant progress except that now he is using bilateral Lofstrand canes for increased safety.  Two other factors lend additional support to the ALJ's view.  Just like a nurse, a physical therapist is not an acceptable medical source and does not have prescriptive privileges.  And, there is no record evidence that the use of bilateral canes was ever prescribed for Plaintiff.  The ALJ's finding that neither the use of one, nor the use of two canes was prescribed for Plaintiff is supported by the record evidence.

Finally, Plaintiff argues that several of Plaintiff's medical care providers suggested that Plaintiff needed to use a cane, and the ALJ erroneously rejected that evidence

"because of the status . . . of Plaintiff's treatment providers as 'other sources' rather than 'acceptable medical sources.'"  (Pl. Br. 14).  As Plaintiff suggests, the ALJ noted that Ms. Cassanova, a registered nurse, and Ms. Lawrence, an occupational therapist, are not "acceptable medical sources" within the meaning of the regulations.  (R. 387-88, 391).  As to Ms. Cassanova, the ALJ used that fact only in finding that she does not have the ability to issue a prescription, and nevertheless favorably addressed her opinions regarding running, standing, walking, postural activities, performing strenuous activities, and heavy lifting, and assigned "some weight" to them.  Id. at 387-88.  The ALJ assigned "little weight to Ms. Lawrence's opinions because she is not an acceptable medical source, and because, given their inconsistency with the remainder of the medical evidence of record, these opinions appear to reflect claimant's subjective complaints and symptoms exaggeration more than the actual extent of his physical limitations."  (R. 388).  The ALJ did not discount Ms. Lawrence's opinions merely because she is not an "acceptable medical source."  But, he also explained that her opinions were inconsistent with the medical evidence as a whole and reflected Plaintiff's subjective complaints and symptom exaggeration.  Moreover, he explained that Ms. Lawrence "noted that claimant's scores on the McGill Pain Questionnaire 'tend to indicate exaggeration of symptoms.'"  (R. 388) (quoting Exhibit 12F, R. 374).  And, in discussing Ms. Lawrence's opinions the ALJ explained that "as noted by Judge Pardo in the prior decision, 'claimant's presentation at his examinations cannot entirely, be relied upon as his best efforts.'"  Id. (quoting Ex 5A at 11, Judge Pardo's prior decision, R. 437; duplicate of R. 17).

11

In his Reply Brief, Plaintiff objects to the ALJ's reliance on the McGill Pain Questionnaire because Ms. Lawrence's report only stated, "Of consideration, scores above 30 tend to indicate exaggeration of symptoms," and Plaintiff's actual score did not appear in the record.  (Reply 3) (quoting R. 374).  Plaintiff is correct in so far as he goes, but the record supports the ALJ's inference that Plaintiff's score indicated exaggeration of symptoms.  The portion of Ms. Lawrence's report at issue here is a section titled "Pain complaints."  (R. 374) (bolding omitted).  In that section, Ms. Lawrence summarized Plaintiff's reports regarding pain, and noted that Plaintiff had "completed the Borg Numerical Pain Scale, the Huckisson Visual Analogue Pain Scale, the McGill Pain Questionnaire, and Ransford Pain Drawing" before his functional capacity evaluation.  Id. She recorded her summary of each of these instruments in this portion of her report, id. at 374-75, and with regard to the McGill Pain Questionnaire stated "Mr. Bond's score prior to testing:  Of consideration, scores above 30 tend to indicate exaggeration of symptoms." (R. 374).  While it is true that Ms. Lawrence apparently omitted to include the actual score Plaintiff achieved on the McGill Pain Questionnaire, in context, the record supports the inference drawn by the ALJ, that Plaintiff scored above 30 on that instrument, because Ms. Lawrence indicated that exaggeration of symptoms was worthy "[o]f consideration." (R. 374).  This understanding is supported by the fact that in his prior case before Judge Marten, Plaintiff made the same argument, and that court also found no error in the ALJ's reliance on the Questionnaire.  (R. 448-49).

12

Over, and over throughout the decision, the ALJ returns to the fact that Plaintiff's allegations are inconsistent and exaggerated, and that he omits to include all facts in his reports.  And, the record supports the ALJ's findings in this regard.  As but one example of the inconsistencies revealed by the record, the court notes that the ALJ discussed incidents occurring on March 11, 2014, wherein a nurse, Ms. Powell, noted that Plaintiff was "ambulatory without assistance or difficulty," but that later in the same day Plaintiff had a physical therapy appointment with Mr. Sanford who recorded his observation of Plaintiff using a cane and knee brace and walking with an antalgic gait.  (R. 389).  The ALJ explained his conclusion: "The gross discrepancy between the observations of Ms. Powell and Mr. Sanford on the same date tends to corroborate the results of the McGill Pain Questionnaire, demonstrating exaggeration of symptoms."  Id.

Plaintiff's allegations of pain, antalgic gait, and limited ability to walk, stand, or otherwise use his right knee cannot be confirmed to any substantial degree by clinical or laboratory diagnostic testing.  Therefore, his medical providers relied on his reports and demonstrations of ability or limitations in ability.  Consequently, the ALJ's finding that Plaintiff's allegations of disabling symptoms are not entirely credible and that the medical care providers' opinions relying on those allegations are suspect, must be affirmed because the record evidence supports the ALJ's findings regarding credibility.  Moreover, the ALJ accepted that Plaintiff has significant RFC limitations prohibiting him from climbing stairs, ladders, ropes, and scaffolds, limiting him to occasional climbing of ramps; providing that he is able to balance, stoop, kneel, crouch, and crawl only

occasionally; and necessitating that he avoid concentrated exposure to hazardous machinery and unprotected heights.  (R. 389).  The ALJ explained this determination as a whole:

> In sum, the above residual functional capacity assessment is supported by the prior determinations of ALJ Pardo and District Court Judge Martens [sic]; <u>claimant's allegations and testimony, insofar as they are credible</u>; the medical evidence of record, opinion evidence of claimant's treating provider; and the opinions of State agency consultants.

(R. 392) (emphasis added).

While the record contains evidence and opinions which, if believed, would support a finding of disability, there is no doubt that the record supports the findings of the ALJ, and that is the question before the court on review.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966) (same).

## III.    Duty to Develop the Record

Plaintiff claims the ALJ failed in his duty to develop the record because he did not obtain an updated medical opinion even though the most recent medical opinion in the record was four years old at the time of the final decision in this case.  (Pl. Br. 15).  He points out that disability hearings are non-adversarial and that the ALJ has a duty to

develop the record even when the claimant is represented before the ALJ.  Id. at 15-16

(citing Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993)).  The Commissioner

argues that she "has broad latitude in ordering a consultative examination" (Comm'r Br.

6) (quoting Diaz v. Sec'y of Health & Human Servs. 898 F.2d 774, 778 (10th Cir. 1990)),

that the records added to the record before the ALJ on remand "do not demonstrate that

Plaintiff's knee condition worsened in any meaningful way," id. at 5, and that therefore

the record was complete and there was no need to order another consultative examination.

Id. at 6.

As the Commissioner suggests, she "has broad latitude in ordering consultative

examinations."  Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).

> [But, t]he ALJ has a basic obligation in every social security
> case to ensure that an adequate record is developed during the
> disability hearing consistent with the issues raised.  This is
> true despite the presence of counsel, although the duty is
> heightened when the claimant is unrepresented.  The duty is
> one of inquiry, ensuring that the ALJ is informed about facts
> relevant to his decision and learns the claimant's own version
> of those facts.

> Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th
> Cir. 1993) (citations, quotations, and brackets omitted).  Further, under 20
> C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a
> claimant's] treating physician or psychologist or other medical source is
> inadequate for [the agency] to determine whether [the claimant is] disabled,
> [the agency] will need additional information to reach a determination or a
> decision."

> Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

There is no doubt here that the ALJ fulfilled his duty to inform himself of the facts relevant to his decision, including Plaintiff's version of those facts.  Moreover, the record evidence was certainly adequate for the ALJ to make a decision.  But Plaintiff argues that because of the passage of time after the medical opinions upon which the ALJ relied, those opinions became stale, and it was necessary to secure another medical opinion regarding Plaintiff's medical condition and his capabilities.  On the surface, this argument has a certain allure, because an individual's medical condition can change over time, and a disability decision, particularly a decision regarding SSI benefits, should not be made based on old medical evidence.  This argument ignores a consideration particularly relevant in this case.

As noted above, Plaintiff's allegations of pain, antalgic gait, and limited ability to walk, stand, or otherwise use his right knee cannot be confirmed to any substantial degree by independent clinical and laboratory diagnostic testing, and medical providers must rely on Plaintiff's reports and demonstrations of ability or limitations in ability.  Moreover, the record is replete with evidence of Plaintiff's inconsistencies, omissions, and exaggerations.  There is simply no suggestion in this record that ordering another consultative examination would secure a different or more reliable outcome.  The record was adequate for the ALJ to make a disability decision, and, at least in the circumstances of this case, it was not error to fail to order another consultative examination.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

16

Dated this 10th day of December 2015, at Kansas City, Kansas.


                                     s:/ John W. Lungstrum

                                     **John W. Lungstrum**
                                     **United States District Judge**